**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TONYA D. WOOD-MONROE,**
                                        **Plaintiff,**

        **vs.**                                          **7:05-CV-1570**
                                                              **(NAM/RFT)**

**MICHAEL J. ASTRUE,[1]**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Conboy, McKay, Bachman & Kendall, LLP      Lawrence D. Hasseler, Esq.
407 Sherman Street
Watertown, New York 13601
_Attorneys for Plaintiff_

Andrew T. Baxter, Acting                   William H. Pease, Esq.
United States Attorney for
the Northern District of New York
P.O. Box 7198-
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel                  Barbara L. Spivak, Esq.
Social Security Administration             Dennis J. Canning, Esq.
26 Federal Plaza
New York, New York 10278
_Attorneys for Defendant_


**Norman A. Mordue, Chief U.S. District Judge:**

            **MEMORANDUM-DECISION AND ORDER**

_____

        [1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security
Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former
Commissioner Joanne B. Barnhart as the defendant in this action.

## I.      INTRODUCTION

Plaintiff Tonya A. Wood-Monroe brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny her application for supplemental security income ("SSI").  Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.      BACKGROUND

Plaintiff was 40 years old at the time of the administrative hearing on June 1, 2005. (Administrative Transcript ("T.") at p. 49, 307).[2]  She completed the ninth grade.  (T. 312). Plaintiff claims that she has not engaged in substantial gainful activity during any time period relevant to this proceeding.  (Pl.'s Br. at 1, 6-9; *see* T. 52, 57-58, 314).  The Commissioner maintains that Plaintiff has past relevant work experience as a kitchen helper, retail store cashier, day care worker, school lunch monitor, and commercial cleaner.  (Def.'s Br. at 19).  Plaintiff alleges disability due to Type II Bipolar Disorder; foot, ankle, and back injuries; and chronic migraines.

### A.      Plaintiff's Medical Treatment

#### 1.      Treating Physicians

Plaintiff treated for her physical complaints at the Samaritan Family Health Center; her primary treating physician there was Dr. Ernesto Diaz.  (T. 115-37, 253-63).  Records cover the time period from November of 2001 through February of 2005.  *Id.*  In November 2001 and January 2002, Plaintiff complained of pain in the right ear due to an ear infection.  *Id.* at 115-16.

---

[2] Portions of the administrative transcript, Dkt. No. 4, filed by the Commissioner, will be cited herein as "(T. ___)."

She was treated for this infection; her physical examinations were otherwise normal. *Id.* On August 1, 2002, Plaintiff came into the office complaining of right foot pain. *Id.* at 118. On examination, her foot appeared slightly swollen but Plaintiff was able to walk on the foot with no extreme pain. *Id.*

Dr. Diaz performed an annual physical examination on Plaintiff on September 9, 2002. *Id.* at 119. Plaintiff appeared alert, oriented, and in no acute distress. *Id.* Her physical examination was unremarkable; Plaintiff demonstrated full strength of the upper and lower extremities as well as normal gait. *Id.* On January 10, 2003, Plaintiff complained of a headache two days earlier with tingling and numbness in her right arm and the right side of her face, which had resolved spontaneously. *Id.* at 120. Plaintiff reported that she had experienced migraines approximately twice per week since childhood. *Id.* She took Excedrin to resolve her headaches. *Id.* Upon physical examination, Plaintiff appeared obese, alert, in no apparent distress, pleasant, and cooperative. *Id.* She had free range of motion in all extremities, full strength, an intact gait, and normal neurological examination. *Id.* A week later, Plaintiff's physical examination was once again unremarkable, except that some mild cerumen was noted in the left ear. *Id.* at 122. In March of 2004, Plaintiff reported lumbar pain due to a fall in December of 2003. *Id.* at 124. Skelaxin was prescribed for pain, and Plaintiff reported that it helped with her discomfort. *Id.* at 124-25.

On April 26, 2004, Plaintiff's physical examination was essentially unremarkable. *Id.* at 126. On May 13, 2004, Dr. Diaz placed Plaintiff on temporary disability of 20 hours per week of work, or four hours per day. *Id.* at 127. He stated that she would "have some limitations on lifting, carrying, pushing, walking, climbing, standing, or bending," with "[n]o limitation with

sitting or bus traveling." *Id.* These restrictions were due to Plaintiff's reported lower back pain. *Id.* On physical examination, Dr. Diaz noted that Plaintiff had full ranges of motion and was alert, oriented, and in no acute distress. *Id.*

On June 9, 2004, Plaintiff underwent a routine physical examination, which was normal except for some air fluid levels and wax buildup in the left ear. *Id.* at 128. Plaintiff reported that her migraines were "very minimal," and she voiced no conceners, chest pains, or shortness of breath. *Id.* Nurse Sharen Yaworski noted that Plaintiff "[was] on a limited 20 hours of work a week with Social Services and she [was] not complaining of any back pain today." *Id.* Physical examinations during the period from October 2004 through February of 2005 remained normal. *Id.* at 254-57. An X-ray of the lumbar spine taken March 11, 2004 revealed no significant findings. *Id.* at 129. A CT Scan of the head was normal. *Id.* at 130.

Plaintiff was also treated at Mercy Center for Behavioral Health for depression. *Id.* at 138-202, 237-52. Plaintiff was diagnosed with Bipolar II disorder and depression by Dr. Michael Camillo. *Id.* at 153. Plaintiff complained of a depressed mood and stated that she slept two to four hours per night. *Id.* Throughout her counseling with social workers Lisa Chapman and Doreen Perry, Plaintiff was described as having a neat and clean appearance and expressive speech. *See id.* at 154-202. Plaintiff consistently reported being depressed and frustrated. *Id.* In November of 2002 she was fired from her job for serving alcohol to a minor and stated that she felt angry, embarrassed, and sad about this. *Id.* at 156. Plaintiff planned and attended her daughter's wedding in the fall of 2002. *Id.* at 156-57.

Dr. Camillo filled out a mental assessment of ability to do work-related activities on June 3, 2005. *Id.* at 303-06. He assessed Plaintiff as having a fair ability to deal with the public, use

judgment, and maintain attention and concentration; a good ability to function independently; and an unknown but estimated poor ability to follow work rules, relate to co-workers, interact with supervisors, and deal with work stress.  *Id.* at 303.  He stated that Plaintiff had "a history of getting fired and quitting jobs, e.g. fired from a gas station/convenience store for selling alcohol to a minor . . . [s]he quit the last job she had through DSS as a kitchen worker because she could not bear interacting with . . . most of her co-workers."  *Id.* at 303-04.  According to Dr. Camillo, the "end result" of Tonya's "fear[] that nobody like[d] her at [work]" was that she "walk[ed] off the job site or she [was] fired."  *Id.* at 304.

### 2.    Consultative Physicians

Dr. Kalyani Ganesh performed an orthopedic consultation on September 28, 2004.  *Id.* at 209-12.  Plaintiff's medications were recorded as: Skelaxin, Sudafed, Nasacort nasal spray, Wellbutrin, and Zoloft.  *Id.* at 209.  Plaintiff reported that she was able to cook and clean daily, do laundry three times per week, and shopping once per week.  *Id.* at 210.  She also cared for her daughter daily, bathed and dressed herself, watched television, listened to radio, read, and went out to appointments.  *Id.*  She exhibited a normal gait and station and needed no help getting on and off the examination table; hand and finger dexterity were intact with 5/5 grip strength; full flexion of the cervical spine; full ranges of motion of the upper and lower extremities as well as full strength; and full flexion but limited extension of the lumbar spine.  *Id.*  She had no sacrioiliac joint tenderness or sciatic notch tenderness, no spasm, scoliosis or kyphosis, and a negative straight leg raising ("SLR") test.  *Id.*  Dr. Ganesh opined that Plaintiff had "[n]o limitation . . . [in] sitting, standing, walking, or use of upper extremities."  *Id.*

Plaintiff underwent a consultative psychiatric examination by Jeanne Shapiro, Ph.D. on

September 28, 2004. *Id.* at 213-17. Plaintiff was cooperative and appropriate upon mental status examination. *Id.* at 215. Her speech was fluent and expressiveness was adequate; thought processes were coherent and goal-directed; mood was irritable; she was oriented to time, place, and person; attention and concentration were intact with an ability to do serial 3's; recent and remote memory were intact; cognitive functioning was assessed in the low average range; and judgment and insight were fair. *Id.* at 215-16. Plaintiff stated that she was depressed because her cousin had passed away recently. *Id.* at 213. Plaintiff reported that she was able to dress, bath, and groom herself some of the time, cook and prepare food, do general cleaning, laundry, shopping if she was driven, carry the groceries, manage money, and take public transportation. *Id.* at 216. Dr. Shapiro opined that Plaintiff appeared capable of understanding and following simple instructions; maintaining attention and concentration and regularly attending to a schedule; making appropriate decisions and learning new tasks; interacting and relating appropriately with others; and dealing with a moderate amount of stress. *Id.* Dr. Shapiro gave Plaintiff a good prognosis. *Id.* at 217.

A psychiatric review technique form, completed by a state agency physician, found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and insufficient evidence of episodes of decompensation. *Id.* at 229. A Mental RFC assessment was completed by Thomas Harding, Ph.D. on November 11, 2004. *Id.* at 233-36. This assessment found that Plaintiff was moderately limited in maintaining attention and concentration for extended periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism, responding appropriately to changes in a work setting, and

6

setting realistic plans or making plans independently of others.  *Id.* at 233-4.  Plaintiff was found not significantly limited in any other areas of mental functioning.  *Id.*

## III.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 2, 2004.  (T. 49).  The application was denied on November 15, 2004.  (T. 25).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 1, 2005. (T. 307).  On January 28, 2005, Administrative Law Judge ("ALJ") Alfred R. Tyminski issued a decision denying plaintiff's claim for disability benefits.  (T. 16-24).  The Appeals Council denied plaintiff's request for review on December 1, 2005, making the ALJ's decision the final determination of the Commissioner. (T. 4-6).  This action followed.

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful

activity since her alleged onset date. (T. 17).  At step two, the ALJ concluded that Plaintiff

suffered from depressive disorder, which qualified as a "severe" impairment within the meaning

of the Social Security Regulations (the "Regulations").  *Id.* at 19.  The ALJ concluded that this

impairment resulted in no limitations in activities of daily living, mild difficulties in maintaining

social functioning, moderate deficiencies in concentration, persistence, or pace, and one or two

episodes of decompensation.  *Id.*  At the third step of the analysis, the ALJ determined that this

impairment did not meet or equal the severity of any impairment listed in Appendix 1 of the

Regulations.  *Id.* at 19.  At the fourth step, the ALJ found that Plaintiff had the following residual

functional capacity ("RFC"):

> [The claimant retains the RFC] for simple work activity at all levels of exertion with
> moderate limitations in maintaining attention and concentration for extended periods,
> interacting appropriately with the general public, accepting instructions and
> responding appropriately to criticism from supervisors, responding appropriately to
> changes in the work setting, and setting realistic goals or making plans independently
> of others.  She has no significant limitations with remembering locations and work-
> like procedures, understanding, remembering and carrying out very short, simple and
> detailed instructions, performing activities within a schedule, maintaining regular
> attendance, sustaining an ordinary routine without special supervision, working in
> coordination with or proximity to others, making simple work-related decisions,
> completing a normal workday and workweek without interruptions, asking simple
> questions or requesting assistance, getting along with coworkers or peers without
> distracting them, maintaining socially appropriate behavior, being aware of normal
> hazards, and traveling in unfamiliar places or using public transportation.

*Id.* at 22.

At step five, the ALJ concluded that Plaintiff could perform her past relevant work as a

kitchen helper, retail store cashier, day care worker, school lunch monitor, and commercial

cleaner.  *Id.* at 24.

**V.     DISCUSSION**

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*

*v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that: (1) the ALJ erroneously concluded that Plaintiff had past relevant

work to which she could return; (2) the ALJ failed to follow the treating physician rule; (3)  the

ALJ failed to properly evaluate Plaintiff's mental impairments; and (4) the ALJ improperly

assessed Plaintiff's credibility.  Pl.'s Br. at 6-19.

**A.     Past Relevant Work**

Plaintiff argues that she did not have any past relevant work experience as that term is

defined under the regulations.  Pl.'s Br. at 6-9.  Work is considered past relevant work experience

when it "was done within the last 15 years, lasted long enough for [a claimant] to learn to do it,

and was substantial gainful activity [SGA]."  SSR 82-62, 1982 WL 31386, *1 (SSA 1982).  Work

is considered "substantial" if it "involves doing significant physical or mental activities," 20

C.F.R. § 416.972(a), and is considered"gainful" if it is "the kind of work usually done for pay or

profit, whether or not a profit is realized," *id.* § 416.972(b). The regulations state that the SSA

"uses several guides to decide whether the work [the claimant has] done shows that [she is] able

to do substantial gainful activity," including the provenance of the claimant's "earnings." 20

C.F.R. § 416.974(a).  *See Melville v. Apfel*, 198 F.3d 45, 53 (2d Cir. N.Y. 1999).

The regulations require that the ALJ inquire into the demands of Plaintiff's past relevant work, determining the specific physical and mental requirements of that work either as it was performed by Plaintiff or as it is generally performed in the national economy.  SSR 82-62, 1982 WL 31386 at *2; 20 C.F.R. § 404.1520(e), 416.920(e).  The ALJ must then compare these demands with Plaintiff's RFC in order to determine whether Plaintiff can perform his or her past relevant work.  *Id.*  SSR 82-62 describes the Commissioner's duty:

> Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived form a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

*Id.* *3.  The ALJ may consult a vocational expert or the Dictionary of Occupational Titles for relevant evidence concerning the physical and mental demands of a claimant's past relevant work. 20 C.F.R. § 404.1560(b)(2).

In his decision, the ALJ found that Plaintiff had past relevant work as a kitchen helper, retail store cashier, day care worker, school lunch monitor, and commercial cleaner.  *Id.* at 16. While Plaintiff did engage in all of these jobs in some manner or another, the record reveals that Plaintiff's earnings satisfied the substantial gainful activity earnings requirements only in the

years 1992 and 1993, but for none of the remaining years in the fifteen years preceding her

application of June 2, 2004.  (T. 52); *see* 20 C.F.R. § 416.974, Table 1.  During these years

Plaintiff worked as a cashier.  (T. 58).

Because Plaintiff's job as a cashier constituted substantial gainful activity and Plaintiff

performed this work for a significant period of time in which she presumably learned how to

perform it, this work did constitute past relevant work experience within the meaning of the

regulations.  However, the ALJ's decision that Plaintiff could return to her "past relevant work"

which he deemed to include that of kitchen helper, retail store cashier, day care worker, school

lunch monitor, and commercial cleaner, was inadequately explained.  In determining that Plaintiff

could return to her past relevant work, the ALJ simply stated:

> The evidence in this case establishes that the claimant has past relevant
> work as kitchen helper, retail store cashier, day care worker, school lunch
> monitor, and commercial cleaner, which did not require the performance
> of work-related activities precluded by the foregoing residual functional
> capacity.

*Id.* at 22.  The ALJ did not inquire into the demands of Plaintiff's work as a cashier, giving only

cursory attention to Plaintiff's jobs at the hearing level, and failed to consult any external sources

such as the Dictionary of Occupational Titles or a vocational expert in coming to the conclusion

that Plaintiff could perform her broadly and erroneously defined past relevant work.  *Id.* at 22,

311-15.  Despite the Commissioner's argument to the contrary, these failures constitute

reversible error.  Although Plaintiff bears the burden of proving that she cannot perform past

relevant work, the Commissioner has the duty to adequately inquire into the demands of

Plaintiff's past relevant work so that a correct decision can be reached as to Plaintiff's ability or

inability to perform it.  SSR 82-62, 1982 WL 31386 at *2-3; 20 C.F.R. § 404.1520(e), 416.920(e).

11

The case is therefore remanded for an inquiry into the specific demands of Plaintiff's past relevant work.

**B.      Treating Physician Rule**

Plaintiff argues that the ALJ failed to properly follow the treating physician rule when he did not assign controlling weight to the opinions of Drs. Diaz and Camillo.  (Pl.'s Br. at 9-15; *see* T. 228-33).  Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).  An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  *Rosa*, 168 F.3d at 79.  Thus, if the treating physician's opinion is not given controlling weight, the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions."  *Snell*, 177 F.3d at 133.  Thus, a treating physician's disability assessment is not determinative.  *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other

evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Plaintiff disputes the ALJ's decision to give less than controlling weight to the May 13, 2004 opinion of Dr. Diaz, in which he placed Plaintiff "on temporary disability" limiting her to twenty hours of work per week and stated that she would have "some limitations on lifting, carrying, pushing, walking, climbing, standing, or bending," but "[n]o limitation with sitting or bus traveling."  (T. 127).  This limitation was given in response to a back injury Plaintiff sustained in December of 2003.  *Id.* at 124.  It is apparent from the record that the above opinion was given not as a permanent assessment of Plaintiff's functional capacities, but as a temporary limitation.  Regardless, the opinion as to limitations in lifting, carrying, pushing, walking, climbing, standing, and bending is unsupported by Dr. Diaz's own treatment notes as well as the record as a whole.  On the same day that he agreed to place Plaintiff on temporary disability, he noted on physical examination that she had a full range of motion.  *Id.* at 127.  In December of 2004, some seven months after the opinion in question was given, Dr. Diaz recorded that Plaintiff was alert, oriented and in no acute distress; had a normal cardiovascular examination; and tenderness of the right foot heel, but noted nothing – either objective or subjective – regarding back pain or concomitant limitations.  *Id.* at 256.  Physical examinations, performed by a nurse in Dr. Diaz's office on June 9, 2004 and February 9, 2005, were unremarkable and noted no complaints from Plaintiff regarding back pain.  *Id.* at 128, 257.  In fact, the June 9, 2004 examination specifically noted that Plaintiff was "not complaining of any back pain today."  *Id.* at 128.

Dr. Ganesh's September 2004 consultative examination also fails to support the May 13, 2004 opinion from Dr. Diaz.  Dr. Ganesh noted that Plaintiff was able to perform household chores and attend to her personal needs.  *Id.* at 210.  Upon physical examination, Plaintiff demonstrated a normal gait, normal sensory examination, full strength throughout, no spasm or tenderness of the spine, and a negative SLR test.  *Id.* at 210-11.  X-rays of the lumbosacral spine were normal.  *Id.* at 211-12.  In Dr. Ganesh's opinion, as of that point Plaintiff had no physical limitations in her ability to sit, walk, stand, or use her arms and hands.  *Id.* at 211.

Based on the foregoing, the Court concludes that substantial evidence supported the ALJ's decision to afford less than controlling weight to the May 13, 2004 opinion of Dr. Diaz.  The opinion's temporary nature, along with its lack of support in the record, indicate that the ALJ was not required to assign it controlling weight under the treating physician rule.

Plaintiff also points to a June 3, 2005 opinion from Dr. Camillo, Plaintiff's treating psychologist, which indicated several mental limitations on Plaintiff's ability to perform work-related activities.  *See id.* at 303-05.  Dr. Camillo assessed Plaintiff as having a fair ability to deal with the public, use judgment, and maintain attention and concentration; a good ability to function independently; and an unknown but estimated poor ability to follow work rules, relate to co-workers, interact with supervisors, and deal with work stress.  *Id.* at 303.  He also indicated an unknown but estimated poor ability to understand, remember, and carry out complex job instructions and to understand, remember, and carry out detailed but not complex job instructions; and a fair ability to understand, remember, and carry out simple job instructions.  *Id.* at 305. Plaintiff was assessed as having a good ability to maintain her personal appearance, but a poor ability to behave in an emotionally stable manner, relate predictably in social situations, and

demonstrate reliability.  *Id.*  He stated that Plaintiff had "a history of getting fired and quitting

jobs, e.g. fired from a gas station/convenience store for selling alcohol to a minor . . . [s]he quit

the last job she had through DSS as a kitchen worker because she could not bear interacting with .

. . most of her co-workers." *Id.* at 303-04.  According to Dr. Camillo, the "end result" of Tonya's

"fear[] that nobody like[d] her at [work]" was that she "walk[ed] off the job site or she [was]

fired." *Id.* at 304.

The ALJ assigned this opinion little weight, reasoning that it was inconsistent with itself

as well as unsupported by the record. *Id.* at 20.  The ALJ discussed the fact that the opinion

evaluated several of Plaintiff's abilities as "unknown," theorizing that perhaps more than one

individual wrote on the form. *Id.*  While the Court does not necessarily agree on this

interpretation, it does appear that Dr. Camillo was equivocal in his opinion that many of

Plaintiff's mental abilities were "poor."  However, the main point is that the opinion was largely

unsupported by substantial evidence of record.  Dr. Camillo's assessments of Plaintiff's mental

functioning showed consistently normal findings and overall good functioning. *Id.* at 177, 181-

82, 185-86, 191-92, 196-97.  Upon psychiatric consultation, Dr. Shapiro diagnosed Plaintiff with

bereavement as a result of her cousin's passing, but assessed her mental functioning as normal.

*Id.* at 213-17.  Dr. Shapiro opined that Plaintiff appeared capable of understanding and following

simple instructions; maintaining attention and concentration and regularly attending to a schedule;

making appropriate decisions and learning new tasks; interacting and relating appropriately with

others; and dealing with a moderate amount of stress. *Id.*

Moreover, the Court concludes that Dr. Camillo's assessment, inasmuch as it was

supported by evidence of record, was incorporated into the RFC finding, which determined that

Plaintiff had moderate limitations in maintaining and concentration for extended periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. *Id.* at 23.

For the foregoing reasons, the ALJ properly applied the treating physician rule to the opinions of Drs. Diaz and Camillo.

## C.     Mental Impairments

Plaintiff argues that the ALJ did not follow the proper analysis in evaluating her mental impairments. Pl.'s Br. at 15-18. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure at each level of administrative review. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The Commissioner first records the pertinent signs, symptoms, findings, functional limitations, and effects of treatments contained in the record. *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If a mental impairment is determined to exist, the Commissioner must next indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent. *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). In doing so the Commissioner rates the degree of functional loss resulting from the impairment – on a scale ranging from no limitation to severe limitation, the latter of which is incompatible with the ability to do work-like functions – analyzing four specific factors, including 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

The Commissioner must then determine the severity of the mental impairment. *Id.* §§

404.1520a(d), 416.920a(d)(2).  Where the Commissioner rates the degree of limitation in the first three functional areas as "none" or "mild", and "none" in the fourth functional area, the Commissioner will generally conclude that claimant's impairment is not severe, unless the evidence indicates otherwise.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If, on the other hand, the Commissioner finds the claimant's medical impairment to be severe, she must determine whether it meets or equals a listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  In the event the impairment is deemed severe, but does not meet or equal a listed mental disorder, the Commissioner next analyzes the claimant's RFC, considering whether he or she is limited in the ability to carry out certain mental activities – such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting – to such a degree as to reduce his or her ability to do past relevant work and other work.  *See* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c), 416.920a(d)(3), 416.945(c).

To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).

In this case, the ALJ followed the technique laid out above in analyzing Plaintiff's mental impairments.  (T. 18-21).  The ALJ discussed the pertinent medical findings relating to Plaintiff's psychiatric history, including Plaintiff's treatment at Mercy Behavioral Health and Wellness Center ("Mercy") as well as the consultative psychiatric examination performed by Dr. Shapiro. *Id.*  Plaintiff contends that the ALJ failed to specifically outline certain areas of the record relating to Plaintiff's mental impairments.  Pl.'s Br. at 16.  Although the ALJ did not specifically address

every piece of psychological evidence, his review of the psychiatric record was thorough and encompassed a satisfactory overview of Plaintiff's psychiatric treatment and condition. The ALJ discussed Plaintiff's treatment with Dr. Camillo and other treating sources at Mercy and Dr. Shapiro's psychiatric consultation. (T. 18-21). The ALJ was not required to address every single piece of medical evidence in his decision; it was enough that he discussed the crucial elements with sufficient specificity to allow the reviewing court to determine whether the decision was supported by substantial evidence. *See Jones v. Barnhart*, 2004 WL 3158536, *6 (E.D.N.Y. 2004) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

Based on his review of the evidence, the ALJ determined that Planitiff suffered from no limitations in activities of daily living, mild difficulties in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. (T. 19). Substantial evidence supported this decision. In terms of activities of daily living, the record demonstrates that Plaintiff was able to cook and clean daily, do laundry three times per week and shopping once per week, care for her daughter daily, bathe and dress herself, watch television, listen to radio, read, and get out to appointments. *Id.* at 210. Plaintiff's difficulties keeping a job, as documented in the record, are accounted for by the ALJ's finding that she suffered moderate deficiencies in concentration, persistence, or pace. *See id.* at 305. The record also supports the ALJ's conclusion that Plaintiff had only mild difficulties in social functioning: although she often reported frustration at counseling sessions, her mental status examinations were consistently normal with good functioning reported. *See id.* at 177, 181-82, 185-86, 191-92, 196-97. Moreover, Dr. Shapiro found that Plaintiff had no significant limitations in mental functioning, and a state agency

physician found limitations largely consistent with the ALJ's ultimate RFC determination.  *Id.* at 217, 233-36.  For these reasons, the Court concludes that the ALJ followed the proper analysis in evaluating Plaintiff's mental functioning, and that his decision in this regard was supported by substantial evidence.

**D.     Credibility**

Plaintiff argues that the ALJ erroneously determined that Plaintiff's statements regarding her impairments were not entirely credible.  Pl.'s Br. at 17-19.  In making this argument, Plaintiff relies heavily on the contention that the ALJ failed to follow the treating physician rule and improperly gave less than controlling weight to Dr. Camillo's June 3, 2003 opinion.  *Id.*; (T. 303-06).  To the extent that Plaintiff relies on this argument, the Court has already decided that the ALJ's weighing of Dr. Camillo's opinion was proper.

It is well settled that "a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence".  *Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* SSR 96-7p, 1996 WL 374186, at *2.

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 220 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987)) (citations omitted).  It is insufficient for an ALJ to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible".  SSR 96-7p, 1996 WL 374186, at *4 (SSA July 2, 1996).  Absent such findings, a remand is required.  *Miller v. Shalala*, 894 F. Supp. 73, 75 (N.D.N.Y. 1995); *see also Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("a finding that the Commissioner has failed to specify the

basis for his conclusions is [a] compelling cause for remand").

In this case, the ALJ found that Plaintiff's subjective complaints of pain were not fully credible. (Tr. 21). The ALJ acknowledged that Plaintiff suffered from impairments which could be expected to produce some of the symptoms alleged, but concluded that Plaintiff's full allegations of pain were not credible because they were not consistent with the objective medical evidence as well as Plaintiff's testimony as to her daily activities. *Id.* As the ALJ noted, Plaintiff testified that she takes public transportation or walks to destinations, attends to her personal needs including bathing and dressing, does laundry, cooking, and cleaning, attends classes and meetings at Mercy Hospital, watches television, reads, cares for her daughter, and visits her aunt. *Id.* at 316-21. Further, objective medical evidence indicated that Plaintiff's physical examinations were consistently unremarkable and mental status examinations were essentially normal. *See id.* at 118, 120, 122, 124-25, 127, 129-30, 177, 181-82, 185-86, 191-92, 196-97, 209-12, 254-57. Given the evidence in the record as well as the ALJ's explanation for his credibility determination, the Court finds that this determination was proper and supported by substantial evidence.

**VI.    CONCLUSION**

Based upon the foregoing, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 § U.S.C. 405(g) for consideration of the demands of Plaintiff's past relevant work; and for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: September 16, 2008
        Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

21